IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

MELVIN O. WRIGHT,

                     Plaintiff,

                                    Civil Action No.
     v.                         9:03-CV-0743 (LEK/DEP)

GLENN S. GOORD, *et al.*,

                    Defendants.

_____

APPEARANCES:              _____OF COUNSEL:

FOR PETITIONER:

MELVIN O. WRIGHT
Coxsackie, New York 12051-0200

FOR RESPONDENT:

HON. ELIOT SPITZER      CHARLES J. QUACKENBUSH, ESQ.
Office of Attorney General    Assistant Attorney General
The Capitol
Albany, NY 12224

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

     Plaintiff Melvin O. Wright, a New York State prison inmate who is

proceeding *pro se* and *in forma pauperis*, has commenced this civil rights

action pursuant to 42 U.S.C. § 1983 complaining of the deprivation of his

constitutional rights.  Though somewhat unclear on this score, plaintiff's complaint appears to assert claims based upon defendants' alleged failure to protect him from an attack by a fellow inmate, and violation of his rights to equal protection and procedural due process stemming from the issuance of a misbehavior report to Wright, who is a minority, but not to another, non-minority inmate involved in a separate incident unrelated to the attack, with the resulting loss of certain privileges following a hearing.  As relief, plaintiff seeks recovery of large sums of money against the various named defendants, both as individuals and in their official capacities.

Currently pending before the court is a summary judgment motion filed by the defendants seeking dismissal of plaintiff's claims on a variety of grounds including, *inter alia*, failure to exhaust available administrative remedies, lack of personal involvement, and plaintiff's failure to demonstrate either the deprivation of a protected liberty interest or procedural due process associated with any such deprivation.  For the reasons set forth below, I discern no basis upon which a reasonable fact-finder could conclude from the evidence now before the court that plaintiff has established any of the claims set forth in his complaint, and therefore

2

recommend that defendants' motion be granted.

I.    BACKGROUND

Plaintiff is a prison inmate entrusted to the custody of the New York State Department of Correctional Services ("DOCS").  Amended Complaint (Dkt. No. 7) ¶ 2; Quackenbush Decl. (Dkt. No. 48) App. C.  At the relevant times, plaintiff was incarcerated at the Coxsackie Correctional Facility ("Coxsackie"), and housed in a regional medical unit ("RMU") annexed to that prison.  *Id*.

On February 6, 2003 plaintiff was struck on the head with a cane by a fellow inmate.[1]  Amended Complaint (Dkt. No. 7) ¶ 6.  Following the incident security was summoned, and the cane was taken away from the fellow inmate.[2]  Amended Complaint (Dkt. No. 7) ¶ 8; Quackenbush Decl. (Dkt. No. 48) App. A, at 10-16.  Neither inmate suffered any injury during the encounter, nor were any misbehavior reports issued as a result of the incident.  Quackenbush Decl. (Dkt. No. 48) App. A, at 10-16.

---

[1]    Plaintiff attributes the assault to the fact that he was watching a New York Jets or New York Giants football game on television, whereas his roommate wanted to watch the Buffalo Bills play.  Quackenbush Decl. (Dkt. No. 48) App. A, at 10-11.

[2]    According to plaintiff's complaint, when questioned regarding the incident by the responding prison personnel, the aggressor inmate, who is white, accused Wright, an African American, of striking him with the cane and calling him a "cracker."  Amended Complaint (Dkt. No. 7) ¶¶ 6-8.

On or about April 2, 2003, while still confined within the Coxsackie RMU, plaintiff left his room and returned a stack of newspapers to a fellow inmate.  Amended Complaint (Dkt. No. 7) ¶¶ 11-12; Quackenbush Decl. (Dkt. No. 48) App. B.  As a result of that incident, two separate misbehavior reports were issued to the plaintiff, both by Corrections Officer A. Morris.  Amended Complaint (Dkt. No. 7) ¶¶ 12-14.  One of those disciplinary charges was dismissed on April 11, 2003.  *Id.* ¶ 14. The misbehavior report which was not dismissed accused plaintiff of failure to obey a direct order without argument (Rule 106.10), being out of place (Rule 109.10), engaging in an unauthorized exchange (Rule 113.15), and possessing an authorized item in an unauthorized area (Rule 113.22).  Quackenbush Decl. (Dkt. No. 48) App. B.

A Tier II hearing was conducted in connection with the second misbehavior report on April 14, 2003 by Corrections Lieutenant Tiberia, a defendant in the action.[3]  Quackenbush Decl. (Dkt. No. 48) App. B.  At the

---

[3]     The DOCS conducts three types of inmate disciplinary hearings.  Tier I hearings address the least serious infractions, and can result in minor punishments such as the loss of recreation privileges.  Tier II hearings involve more serious infractions, and can result in penalties which include confinement for a period of time in the Special Housing Unit ("SHU").  Tier III hearings concern the most serious violations, and could result in unlimited SHU confinement and the loss of "good time" credits.  *See Hynes v. Squillace*, 143 F.3d 653, 655 (2d Cir.), *cert. denied*, 525 U.S. 907, 119 S. Ct. 246 (1998).

conclusion of that hearing plaintiff was found guilty of engaging in an unauthorized exchange and possession of property in an unauthorized area, but acquitted of the remaining two charges.  Quackenbush Decl. (Dkt. No. 48) App. B.  As a result of that finding the hearing officer imposed a penalty of fourteen days of loss of recreation and commissary privileges, together with the issuance of a "counsel reprimand".  *Id*.  The punishment resulting from the hearing did not include any restriction regarding housing, including keeplock or disciplinary SHU confinement.  Amended Complaint (Dkt. No. 7) ¶¶ 11-16; Quackenbush Decl. (Dkt. No. 48) App. A, at 26-27.

II.    PROCEDURAL HISTORY

Plaintiff commenced this action on June 16, 2003 and, at the direction of the court, ultimately filed a second amended complaint – the currently operative pleading – on August 15, 2003.[4]  Dkt. Nos. 1,7.  Generously construed, plaintiff's complaint appears to claim the deprivation of procedural due process, the denial of equal protection, and

---

[4]       In his initial complaint, plaintiff named Governor George Pataki and the State of New York as defendants, premising their liability for the constitutional violations alleged on *respondeat superior*.  *See* Complaint (Dkt. No. 1) ¶ 3(a).  The court subsequently dismissed plaintiff's claims dismissed against those defendants, *sua sponte*, by order issued on July 14, 2003.  Dkt. No. 5.

potentially the failure of prison officials to protect him from assault by fellow inmates.[5]  Following service, issue was joined on July 12, 2004 by the filing of an answer on behalf of the defendants.  Dkt. No. 32.

On August 25, 2005 defendants moved seeking entry of summary judgment dismissing plaintiff's complaint on a variety of bases.  Dkt. No. 48.  In their motion, defendants argue that 1) because plaintiff did not fully pursue a grievance filed in the matter to completion prior to the commencement of this action, and in any event did not include in that grievance several of the causes of action set forth in his complaint, his claims are procedurally barred; 2) neither plaintiff's complaint nor the record establishes the requisite personal involvement on the part of several of the named defendants in the constitutional violations alleged; 3) plaintiff's procedural due process claim is legally deficient, both because he did not offer any deprivation of a cognizable liberty interest and in light of his failure to establish that he was deprived of procedural due process in connection with such a deprivation; 4) plaintiff's equal

---

[5]      Plaintiff's complaint also alleges that the results of the Tier II hearing should be invalidated since it was not held within the seven day period allegedly prescribed by state law and/or regulation.  Even if such a claim were sustainable in this case, it would not rise to a level of constitutional significance sufficient to support a claim under section 1983.  *See*, *e.g.*, *Duffy v. Selsky*, No. 95 Civ. 0474, 1996 WL 407225, at *8-*9 (S.D.N.Y. July 18, 1996).

protection claim is lacking in merit, based upon the complete lack of

evidence in the record suggesting that the issuance of the April 2, 2003

misbehavior report was motivated by racial animus and that he was

treated differently than non-minority inmates in that regard; and, in any

event, 5) defendants are entitled to qualified immunity. *See id.* Plaintiff

has since responded in opposition to defendant's motion. Dkt. Nos. 49,

52.

   Defendants' motion, which is now ripe for a determination, has been

referred to me for the issuance of a report and recommendation, pursuant

to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule

72.3(c). *See also* Fed.R.Civ.P. 72(b).

III.   <u>DISCUSSION</u>

   A.   <u>Summary Judgment Standard</u>

   Summary judgment is governed by Rule 56 of the Federal Rules of

Civil Procedure.  Under that provision, summary judgment is warranted

when "the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits . . . show that there is no

genuine issue as to any material fact and that the moving party is entitled

to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Celotex*

7

*Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986);

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505,

2509-10 (1986); *Security Ins. Co. of Hartford v. Old Dominion Freight*

*Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004).  A fact is "material", for

purposes of this inquiry, if "it might affect the outcome of the suit under

the governing law."  *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510; *see*

*also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing

*Anderson*).  A material fact is genuinely in dispute "if the evidence is such

that a reasonable jury could return a verdict for the nonmoving party."

*Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510.  Though *pro se* plaintiffs

are entitled to special latitude when defending against summary judgment

motions, they must establish more than merely "metaphysical doubt as to

the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986); *but see Vital v.*

*Interfaith Med. Ctr.*, 168 F.3d 615, 620-21 (2d Cir. 1999) (noting obligation

of court to consider whether *pro se* plaintiff understood nature of summary

judgment process).

    When summary judgment is sought, the moving party bears an

initial burden of demonstrating that there is no genuine dispute of material

fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion. *Anderson*, 477 U.S. at 250 n.4, 106 S. Ct. at 2511 n. 4; *Security Ins.*, 391 F.3d at 83.   In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial.   Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511.

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences from the facts, in a light most favorable to the nonmoving party.  *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998).   Summary judgment is inappropriate where "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor."  *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted); *see also Anderson,* 477 U.S. at 250, 106 S. Ct. at 2511 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict.").

B.   Exhaustion Of Remedies

As a preliminary, threshold matter, in their motion defendants argue

9

that plaintiff's claims are barred by virtue of his failure to fully exhaust

available, internal administrative remedies before commencing this action.

In support of their argument defendants note that while plaintiff did file a

grievance on or about April 24, 2003 (Grievance No. CX-9520-03) relating

to issuance of the April 2, 2003 misbehavior reports, that grievance did

not address the equal protection claim which plaintiff now asserts, and

consequently the issue was not presented in the first instance to prison

officials, as required as a predicate to filing suit.  Defendants also note

that because plaintiff's grievance did not reach the final stage of the

administrative process until after his complaint in this action was filed, his

claims are subject to dismissal based upon the failure to fully exhaust

available administrative remedies before commencing suit.

The Prison Litigation Reform Act of 1996 ("PLRA"), Pub. L. No. 104-

134, 110 Stat. 1321 (1996), requires that "[n]o action shall be brought with

respect to prison conditions under section 1983 of this title, or any other

Federal law, by a prisoner confined in any jail, prison, or other correctional

facility until such administrative remedies as are available are exhausted."

42 U.S.C. § 1997e(a).  It is by now well-recognized that New York prison

inmates have available to them a three-tiered formal grievance procedure,

established in accordance with the statutory scheme set forth in N.Y.

Correction Law § 139 and 7 N.Y.C.R.R. Part 701 ("Inmate Grievance

Program" or "IGP"). *See*, *e.g.*, *Soto v. Elston*, 993 F. Supp. 163, 164

(W.D.N.Y. 1998).  To fully exhaust his or her remedies an inmate must

complete all three levels of this procedure.  *E.g.*, *Ryan v. Lyder*, No. 01

Civ. 10057, 2002 WL 1990380, at *2 (S.D.N.Y. Aug. 28, 2002).  Under

New York's inmate grievance scheme, the process is initiated by the filing

of a grievance with the facility's IGRC.  7 N.Y.C.R.R. § 701.7(a).  If the

inmate is dissatisfied with the result at that initial stage, he or she must

appeal to the facility superintendent.  *Id.* § 701.7(b).  Review of a facility

superintendent's ruling must be sought from the DOCS Central Office

Review Committee ("CORC") in Albany.  *Id.* § 701.7(c).

   The points raised by the defendants in support of their exhaustion

defense appear to be well-taken.  The failure to assert in a grievance a

claim which is later raised in a civil rights action effectively deprives prison

officials of the opportunity to address the argument, and can provide a

proper basis for finding failure to exhaust available administrative

remedies.  *See Saunders v. Goord*, No. 98 CIV. 5057, 2002 WL

31159109, at *4 (S.D.N.Y. Sept. 27, 2002).  Plaintiff's omission of an

equal protection claim, and indeed the lack of any reference to his claim of racially disparate treatment in the grievance filed after issuance of the April, 2003 misbehavior report could be viewed as precluding the maintenance of that claim in this action.  *See id.*

More critical is plaintiff's failure to pursue his grievance through to the CORC before bringing this action.  Such an omission is potentially fatal to his claims.  *Neal v. Goord*, 267 F.3d 116, 122 (2d Cir. 2001).

A review of defendants' answer in this action, however, reflects that in it they did not raise plaintiff's failure to exhaust administrative remedies as a defense.  *See* Dkt. No. 32.  The Second Circuit has held that exhaustion of remedies under the PLRA is not jurisdictional, but instead an affirmative defense which must be pleaded and established by a defendant.  *Richardson v. Goord*, 347 F.3d 431, 433-34 (2d Cir. 2003); *see also*, *e.g.*, *Torrence v. Pesanti*, 239 F. Supp.2d 230, 231 (D. Conn. 2003) (pre-*Richardson* decision finding that exhaustion is an affirmative defense, citing *Jenkins v. Haubert*, 179 F.3d 19 (2d Cir. 1999)).  In light of defendants' failure to raise non-exhaustion either on motion to dismiss pursuant to Rule 12(b) of the Federal Rules of Civil Procedure or in their answer, they are effectively precluded from now seeking dismissal of

plaintiff's claims on this procedural basis.

  C. <u>Eleventh Amendment</u>

  From plaintiff's complaint it appears that he is attempting to sue the DOCS as well as the various named defendants both individually and as DOCS employees.  Defendants seek dismissal of plaintiff's claims against them in their official capacities, arguing that such claims are in effect claims for damages against the State.

  The Eleventh Amendment protects a state against suits brought in federal court by citizens of that state, regardless of the nature of the relief sought.  *Alabama v. Pugh*, 438 U.S. 781, 782, 98 S. Ct. 3057, 3057-58 (1978).  This absolute immunity which states enjoy under the Eleventh Amendment extends to both state agencies and state officials sued in their official capacities, when the essence of the claim involved is one against a state as the real party in interest.  *Richards v. State of New York Appellate Division, Second Department*, 597 F. Supp. 689, 691 (E.D.N.Y. 1984) (citing *Pugh* and *Cory v. White*, 457 U.S. 85, 89-91, 102 S. Ct. 2325, 2328-29 (1982)).  "To the extent that a state official is sued for damages in his official capacity . . . the official is entitled to invoke the

Eleventh Amendment immunity belonging to the state."[6]  *Hafer v. Melo*,

502 U.S. 21, 25, 112 S. Ct. 358, 361 (1991); *Kentucky v. Graham*, 473

U.S. 159, 166-67, 105 S. Ct. 3099, 3105 (1985).

Because plaintiff's section 1983 damage claims against the

defendants as DOCS employees are in reality claims against the State of

New York, they typify those against which the Eleventh Amendment

protects, and are thus subject to dismissal.  *Daisernia v. State of New*

*York*, 582 F. Supp. 792, 798-99 (N.D.N.Y. 1984) (McCurn, J.).

I therefore recommend dismissal of plaintiff's claim for damages as

against the DOCS and the named defendants in their official capacities.

D.    Personal Involvement

In their motion defendants also argue that the record fails to

disclose the requisite degree of personal involvement, particularly on the

part of defendants Fillion, Goord, and Tiberia, in the constitutional

deprivations alleged.

Personal involvement of defendants in alleged constitutional

deprivations is a prerequisite to an award of damages under section

---

[6]        By contrast, the Eleventh Amendment does not establish a barrier
against suits seeking to impose individual or personal liability on state officials
under section 1983.  *See Hafer*, 502 U.S. at 30-31, 112 S. Ct. at 364-65.

1983. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991) and *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087, 98 S. Ct. 1282 (1978)).  In order to prevail on a section 1983 cause of action against an individual, a plaintiff must show some tangible connection between the constitutional violation alleged and that particular defendant.  *See Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

A supervisor cannot be liable for damages under section 1983 solely by virtue of being a supervisor – there is no *respondeat superior* liability under section 1983.  *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501.  A supervisory official can, however, be liable in one of several ways: 1) the supervisor may have directly participated in the challenged conduct; 2) the supervisor, after learning of the violation through a report or appeal, may have failed to remedy the wrong; 3) the supervisor may have created or allowed to continue a policy or custom under which unconstitutional practices occurred; 4) the supervisor may have been grossly negligent in managing the subordinates who caused the unlawful event; or 5) the supervisor may have failed to act on information indicating that unconstitutional acts were

15

occurring.  *Richardson*, 347 F.3d at 435; *Wright*, 21 F.3d at 501; *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986).

       1.   <u>Glenn S. Goord</u>

A thorough search of plaintiff's amended complaint and the record now before the court fails to reflect any direct involvement on the part of Commissioner Goord in the acts of which Wright now complains.  In fact, Commissioner Goord is only mentioned by name in paragraph three of the complaint where plaintiff lists the defendants, and the body of the complaint contains no allegations as to his role in the alleged constitutional violations.  Amended Complaint (Dkt. No. 7) ¶ 3(e).  These allegations are plainly insufficient to implicate defendant Goord.  *E.g., Hucks v. Artuz*, No. 99 Civ. 10420, 2001 WL 210238, at *5 (S.D.N.Y. Feb. 27, 2001) (no personal involvement when defendant named in caption but not described in body of complaint); *Dove v. Fordham Univ.*, 56 F. Supp.2d 330, 335 (S.D.N.Y. 1999) (same); *Brown v. Costello*, 905 F. Supp. 65, 77 (N.D.N.Y. 1995) (same).  I therefore recommend dismissal of plaintiff's claims against Commissioner Goord based upon the lack of his personal involvement in the constitutional deprivations alleged.

       2.   <u>Superintendent Fillion</u>

Defendants also assert that defendant Gary H. Fillion, the Superintendent at Coxsackie, lacks direct involvement in the events underlying plaintiff's causes of action, and seek dismissal of plaintiff's claims against him as well on the basis of personal involvement.  A review of the record reflects that unlike Commissioner Goord, defendant Fillion did have some degree of involvement in the events giving rise to plaintiff's claims, at least to the extent of reviewing and upholding the denial of a grievance filed by the plaintiff directed toward the misbehavior report in issue.  Drawing all inferences in plaintiff's favor, I am unable to conclude based upon his involvement in the grievance review process that no reasonable fact-finder could find liability on the part of defendant Fillion in the constitutional violations alleged by the plaintiff.  *Walker v. Pataro*, No. 99CIV.4607, 2002 WL 664040, at *12-*14 (S.D.N.Y. Apr. 23, 2002). I therefore recommend against dismissal of plaintiff's claims against defendant Fillion based upon lack of personal involvement.

     3.   <u>Joseph Tiberia</u>

Defendants also seek dismissal of plaintiff's claims against Joseph Tiberia based upon lack of personal involvement.  The record discloses that defendant Tiberia conducted the Tier II disciplinary hearing which

17

resulted from the misbehavior report issued by Corrections Officer A. Morris, and led to a finding of guilt and the corresponding imposition of sanctions.  Liberally read, plaintiff's complaint could be regarded as asserting procedural due process violations growing out of that hearing. While, as will be seen, I am recommending a finding that there is no merit to the plaintiff's procedural due process claim, in light of his role as the hearing officer it cannot be said that defendant Tiberia had no personal involvement in the procedural due process violation potentially alleged in plaintiff's complaint.[7]  I therefore recommend against dismissal of plaintiff's claims against defendant Tiberia based upon lack of personal involvement.

    E.   <u>Procedural Due Process</u>

Generously construed, plaintiff's complaint could be interpreted as asserting a procedural due process violation growing out of the Tier II hearing and resulting sanction associated with the April, 2003 misbehavior report.  Defendants maintain that to the extent such a claim is considered as having been advanced by the plaintiff it is legally deficient, both based upon his failure to establish the deprivation of a

---

[7]  See pp. 18-23, *post*.

constitutionally significant liberty interest and because he was afforded

the minimally required, due process required under the Constitution for

such a deprivation.

    To successfully state a claim under 42 U.S.C. § 1983 for denial of

due process arising out of a disciplinary hearing, a plaintiff must show that

he or she both (1) possessed an actual liberty interest, and (2) was

deprived of that interest without being afforded sufficient process.  *See*

*Tellier v. Fields*, 260 F.3d 69, 79-80 (2d Cir. 2000) (citations omitted);

*Hynes*, 143 F.3d at 658; *Bedoya v. Coughlin*, 91 F.3d 349, 351-52 (2d Cir.

1996).

        1.    Liberty Interest

    In *Sandin v. Conner*, 515 U.S. 472, 115 S. Ct. 2293 (1995), the

United States Supreme Court determined that to establish a liberty

interest, a plaintiff must sufficiently demonstrate that (1) the State actually

created a protected liberty interest in being free from segregation; and

that (2) the segregation would impose an "atypical and significant

hardship on the inmate in relation to the ordinary incidents of prison life."

*Id.* at 483-84, 115 S. Ct. at 2300; *Tellier*, 280 F.3d at 80; *Hynes*, 143 F.3d

at 658.  Since the prevailing view is that by its regulatory scheme New

19

York State has created a liberty interest in remaining free from disciplinary confinement, thus satisfying the first *Sandin* factor (*see, e.g., LaBounty v. Coombe*, No. 95 CIV 2617, 2001 WL 1658245, at \*6 (S.D.N.Y. Dec. 26, 2001); *Alvarez v. Coughlin,* No. 94-CV-985, 2001 WL 118598, at \*6 (N.D.N.Y. Feb. 6, 2001) (Kahn, J.)), I must find that the conditions experienced by plaintiff as a result of the Tier II hearing did not rise to the level of an atypical and significant hardship under *Sandin* in order to recommend that defendants' motion be granted.

Atypicality in a *Sandin* inquiry is normally a question of law.[8]  *Colon v. Howard,* 215 F.3d 227, 230-31 (2d Cir. 2000); *Sealey v. Giltner*, 197 F.3d 578, 585 (2d Cir. 1999).  When determining whether a plaintiff possesses a liberty interest, district courts must examine the specific circumstances of confinement, including analysis of both the length and conditions of confinement.  *See Sealey,* 197 F.3d at 586; *Arce v. Walker*, 139 F.3d 329, 335-36 (2d Cir. 1998); *Brooks v. DiFasi*, 112 F.3d 46, 48-49 (2d Cir. 1997).  In cases involving shorter periods of segregated confinement where the plaintiff has not alleged any unusual conditions,

---

[8]      In cases where there is factual dispute concerning the conditions or duration of confinement, however, it may nonetheless be appropriate to submit those disputes to a jury for resolution.  *Colon v. Howard,* 215 F.3d 227, 230-31 (2d Cir. 2000); *Sealey v. Giltner,* 197 F.3d 578, 585 (2d Cir. 1999).

however, a detailed explanation of this analysis is not necessary.[9]  *Hynes*,

143 F.3d at 658; *Arce*, 139 F.3d at 336.

The disciplinary hearing which is the subject of plaintiff's due

process claim led to a finding of guilt and the imposition of a privileges

restriction for a period of either fourteen or, as alleged by the plaintiff in

his complaint, fifteen days.  No disciplinary keeplock or SHU confinement

resulted from that finding.  Under these circumstances, plaintiff did not

suffer significant and atypical hardship in relation to the ordinary incidents

of prison life growing out of the disciplinary hearing. *See Frazier v.*

*Coughlin*, 81 F.3d 313, 317-18 (2d Cir. 1996); *Baskerville v. Blot*, 224

F.Supp.2d 723, 736-37 (S.D.N.Y. 2002); *Hinds v. Coombe*, No. 95-CV-

390, 1998 WL 187448, at *4 (N.D.N.Y. Apr. 15, 1998) (Pooler, J. & Di

Bianco, M.J.).  Plaintiff has therefore failed to establish the liberty interest

---

[9]      While not the only factor to be considered, the duration of a
disciplinary keeplock confinement remains significant under *Sandin. Colon*, 215
F.3d at 231.  Specifically, while under certain circumstances confinement of less
than 101 days could be shown to meet the atypicality standard under *Sandin* (*see
id.* at 232 n.5), the Second Circuit generally takes the position that SHU
confinement under ordinary conditions of more than 305 days rises to the level of
atypicality, whereas normal SHU confinement of 110 days or less does not.  *Id.* at
231-32 (305 days of SHU confinement constitutes an atypical and sufficient
departure).  In fact, in *Colon v. Howard* a Second Circuit panel split markedly on
whether or not adoption of a 180-day "bright line" test for examining SHU
confinement would be appropriate and helpful in resolving these types of cases.
*See id.* at 232-34 (Newman, C.J.), 235-37 (Walker, C.J. and Sack, C.J., concurring
in part).

deprivation required to trigger the Fourteenth Amendment's procedural due process requirements.

      2.   <u>Due Process</u>

      The procedural protections to which a prison inmate is entitled before being deprived of a constitutionally cognizable liberty interest are well established, their contours having been articulated in *Wolff v. McDonnell*, 418 U.S. 539, 564-67, 94 S. Ct. 2963, 2978-80 (1974).  Under *Wolff*, the constitutionally mandated due process requirements include 1) written notice of the charges; 2) the opportunity to appear at a disciplinary hearing and present witnesses and evidence, subject to legitimate safety and penological concerns; 3) a written statement by the hearing officer explaining his or her decision and the reasons for the action being taken; and 4) in some circumstances, the right to assistance in preparing a defense.  *Wolff*, 418 U.S. at 564-67, 94 S. Ct. at 2978-80; *see also Eng v. Coughlin*, 858 F.2d 889, 897-98 (2d Cir. 1988).  Additionally, due process demands that a disciplinary hearing disposition be supported by at least "some evidence."  *Superintendent, Massachusetts Corr. Inst. v. Hill*, 472 U.S. 445, 454-56, 105 S. Ct. 2768, 2773-74 (1985).

      Even assuming, *arguendo*, that plaintiff suffered the deprivation of a

22

constitutionally cognizable liberty interest as a result of the occurrences now at issue, he has cited no respect in which he was denied procedural due process.  A thorough review of the record in this case reflects that plaintiff was provided with notice of the charges against him, the opportunity to hear the evidence against him, and a chance to present witnesses on his own behalf.  The record also discloses that the hearing officer's determination of guilt was supported by some evidence, as constitutionally mandated.  Based upon a thorough review of the record and plaintiff's submissions, the court is unable to detect the existence of any procedural due process shortcoming associated with the hearing and its resulting imposition of punitive measures.

In sum, I recommend dismissal of plaintiff's procedural due process claim based both upon his failure to establish the deprivation of a liberty interest and the lack of evidence that plaintiff was not afforded due process.

F.    Equal Protection

At the heart of plaintiff's complaint in this action is an equal protection claim under the Fourteenth Amendment.  Simply stated, plaintiff maintains that because he was given a misbehavior report as a

result of the April 2, 2003 newspaper incident but his fellow inmate, who

was also involved but, unlike Wright, is not a minority, was not, a

deprivation of equal protection is established.

The Equal Protection Clause directs state actors to treat similarly

situated people alike.  *See City of Cleburne, Texas v. Cleburne Living

Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254 (1985).  To prove a

violation of the Equal Protection Clause, a plaintiff must demonstrate that

he or she was treated differently than others similarly situated as a result

of intentional or purposeful discrimination directed at an identifiable or

suspect class.  *See Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d

Cir.1995) (citing, *inter alia*, *McCleskey v. Kemp*, 481 U.S. 279, 292, 107

S.Ct. 1756, 1767 (1987)).  The plaintiff must also show that the disparity

in treatment "cannot survive the appropriate level of scrutiny which, in the

prison setting, means that he must demonstrate that his treatment was

not reasonably related to [any] legitimate penological interests." *Phillips

v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005) (quoting *Shaw v. Murphy*,

532 U.S. 223, 225, 121 S.Ct. 1475 (2001); internal quotation marks

omitted).

In this instance, plaintiff's equal protection claim boils down to

24

nothing short of sheer surmise, based upon the fact that he was issued a misbehavior report which was substantiated at least in part after a hearing, and the other inmate involved was not.  Plaintiff's equal protection claim finds no evidentiary support in the record.  Indeed, the record does not even disclose that the other inmate who received the newspapers committed an infraction which would warrant the issuance of a misbehavior report.  Under these circumstances, no reasonable fact-finder could conclude, even when all ambiguities are resolved and inferences drawn in his favor, that plaintiff can establish an equal protection violation.

     G.    <u>Failure to Protect</u>

Although plaintiff's complaint does not contain such a cause of action, when liberally interpreted it could be regarded as including a claim that prison officials did not take adequate measures to protect him from the February, 2003 attack by a fellow inmate.  Indirectly, defendants seek summary dismissal of such a claim.

Unquestionably, under the Eighth Amendment prison officials are required to take reasonable measures to guarantee the safety of inmates; this duty includes within it an obligation to protect prisoners from harm

caused by fellow inmates.  *Farmer v. Brennan*, 511 U.S. 825, 833-34, 114 S. Ct. 1970, 1976-77  (1994) (citations omitted); *see also Matthews v. Armitage*, 36 F. Supp.2d 121, 124 (N.D.N.Y. 1999) (Homer, M.J.) (citing, *inter alia*, *Farmer*).  When examining a failure to protect claim under the Eighth Amendment, a court must determine whether the inmate has demonstrated that 1) he or she was incarcerated under conditions posing a substantial risk of serious harm, and that 2) prison officials exhibited deliberate indifference to the inmate's plight.  *Farmer*, 511 U.S. at 834, 837, 114 S. Ct. at 1977, 1979; *Matthews*, 36 F. Supp.2d at 124-25; *Coronado v. Lefevre*, 886 F. Supp. 220, 224 (N.D.N.Y. 1995) (Scullin, J.). As can be seen, this analysis entails both an objective and subjective inquiry.

_____In objective terms, a plaintiff must prove that an alleged deprivation is "sufficiently serious" such that it denied him or her the "minimal civilized measure of life's necessities."  *Dawes v. Walker*, 239 F.3d 489, 493-94 (2nd Cir. 2001) (internal quotations and citations omitted), *overruled on other grounds*, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S. Ct. 992 (2002).  Specifically, as noted above, in situations where an inmate's safety is at issue, that person must demonstrate that he or she was

26

incarcerated under conditions posing a substantial risk of serious harm.

*Farmer*, 511 U.S. at 834, 837, 114 S. Ct. at 1977, 1979; *Dawes*, 239 F.3d

at 493; *Matthews*, 36 F.Supp.2d at 124-25.

Subjectively, to demonstrate that defendants were deliberately

indifferent to his or her plight, a plaintiff must show that prison officials

actually knew of, but disregarded, an excessive risk to his or her health

and safety – "the official must both be aware of facts from which the

inference could be drawn that a substantial risk of serious harm exists,

and he must also draw the inference." *Farmer*, 511 U.S. at 837, 114 S. Ct.

at 1979; *Matthews*, 36 F.Supp.2d at 124-25.

Claims involving the alleged failure of prison officials to protect an

inmate from harm are also subject to review under the Fourteenth

Amendment's substantive due process provision.  Though the requisite

mental state for establishing a Fourteenth Amendment failure to protect

claim is somewhat unclear, it is at least apparent that to be legally

cognizable under that provision, the actions alleged on the part of a

defendant must transcend mere negligence.  *Davidson v. Cannon*, 474

U.S. 344, 347-48, 106 S. Ct. 668, 670 (1986) (lack of due care simply

does not approach the sort of abusive government conduct that the Due

Process Clause was designed to prevent); *Daniels v. Williams*, 474 U.S. 327, 328, 106 S. Ct. 662, 663 (1986) (same); *Morales v. New York State Dep't of Corrs.*, 842 F.2d 27, 30 (2nd Cir. 1988) (section 1983 does not provide cause of action for negligent failure of prison officials to protect an inmate from injury); *Abdul-Matiyn v. New York State Dept of Corr. Servs.*, 871 F.Supp. 1542, 1546-47 (N.D.N.Y. 1994) (Chin, J.) (citing *Morales*).

In this instance the record is devoid of any evidence to suggest that the inmate who attacked the plaintiff had previously assaulted him or threatened to do so, nor is there any other basis to conclude that prison officials were aware of but unreasonably failed to adequately guard against the possibility that plaintiff would be attacked by a fellow inmate. Under these circumstances, whether measured under governing standards established by Eighth or Fourteenth Amendment jurisprudence, plaintiff's failure to protect claim is legally deficient as a matter of law.

IV.    SUMMARY AND RECOMMENDATION

While both equivocal and ambiguous, plaintiff's complaint appears to assert claims of failure to protect, deprivation of procedural due process, and an equal protection violation.  As a threshold matter, while it is clear that plaintiff did not satisfy the requirement under the PLRA that

28

he fully exhaust available administrative remedies with respect to those claims before commencing this action, the defendants are not now positioned to seek dismissal of plaintiff's claims on this basis, having waived the affirmative defense by their omission of any reference to it in the answer on file in this action.

Addressing the merits of plaintiff's claims, at the outset I find that plaintiff has failed to allege, nor does the record disclose, any basis to conclude that defendant Goord had personal involvement in the constitutional violations alleged.  I find, however, that when all ambiguities are resolved in plaintiff's favor, a reasonable fact-finder could conclude that defendants Morris, Tiberia, and Fillion did have direct involvement in the constitutional violations alleged.  I further find, however, that plaintiff is unable to establish either the deprivation of a liberty interest sufficient to trigger the Fourth Amendment's protections, or that he was deprived of due process in connection with the April 14, 2003 Tier II hearing.  I further find that no reasonable fact-finder could conclude plaintiff was singled out and treated differently in connection with the April, 2003 incident because of his race, and that there is no basis to find that the defendants failed to properly protect him from his fellow inmates.  Accordingly, I recommend

that his complaint be dismissed in its entirety.[10]

Based upon the foregoing, it is hereby

RECOMMENDED, that defendants' motion for summary judgment be GRANTED, on the merits, and that plaintiff's complaint in this action be DISMISSED in all respects.

NOTICE:  pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report-recommendation.  Any objections shall be filed with the clerk of the court. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

---

[10]    In light of this recommendation, I have not addressed defendant's alternative argument of entitlement to qualified immunity.  *Saucier v. Katz*, 533 U.S. 194, 201-02, 121 S. Ct. 2151, 2156 (2001); *Harhay v. Town of Ellington Bd. of Ed.*, 323 F.3d 206, 211 (2d Cir. 2003); *Warren v. Keane*, 196 F.3d 330, 332 (2d Cir. 1999) (citing *Salim v. Proulx*, 93 F.3d 86, 89 (2d Cir. 1996)).

It is further ORDERED that the Clerk of the Court serve a copy of

this report and recommendation upon the plaintiff by regular mail and

defendants' counsel by electronic means.


Dated:      February 27, 2006
            Syracuse, NY

David E. Peebles
U.S. Magistrate Judge



G:\prisoner\wright;reprec.wpd



31